[961 NE2d 623, 938 NYS2d 232]

Juliette DeJoie Cadichon et al., Appellants, v Thomas Facelle, M.D., et al., Respondents.

Argued October 19, 2011; decided November 21, 2011

McKINNEY's, CPLR 3216.
NY JUR 2d, Actions §§ 142, 143.
SIEGEL, NY PRAC § 375.

### ANNOTATION REFERENCE

See ALR Index under Dismissal, Discontinuance, and Nonsuit.

### FIND SIMILAR CASES ON WESTLAW®
Database: NY-ORCS
Query: dismiss! /3 ministerial! & vacate /3 dismissal

---

### POINTS OF COUNSEL

*Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac* of counsel), and *Paul B. Weitz & Associates, P.C.*, for appellants. The lower courts erroneously refused to vacate the clerk's administrative marking of this case as dismissed based on plaintiffs' failure to file a note of issue, because same was caused by defendants' disregard of their discovery obligations in connection with the May 3 order; CPLR 205 (a) as amended applies because it was effective prior to the time of the trial court's decision on the motion to vacate; the motion should not have been denied for failure to include an affidavit of merit in any event, since plaintiffs' papers amply showed that defendants' conduct prevented the filing of a note of issue. (*Sortino v Fisher*, 20 AD2d 25; *Thomas v Melbert Foods*, 19 NY2d 216; *Fischer v Pan Am. World Airways*, 16 NY2d 725; *Salama v Cohen*, 16 NY2d 1058; *Commercial Credit Corp. v Lafayette Lincoln-Mercury*, 17 NY2d 367; *Cohn v Borchard Affiliations*, 25 NY2d 237; *Airmont Homes v Town of Ramapo*, 69 NY2d 901; *Chase v Scavuzzo*, 87 NY2d 228; *Lopez v Imperial Delivery Serv.*, 282 AD2d 190; *Townsend v Merrill Lynch Futures*, 187 AD2d 326.)

*Martin Clearwater & Bell LLP*, New York City (*Stewart G. Milch, Joseph L. DeMarzo* and *John J. Barbera* of counsel), for Thomas Facelle, M.D., respondent. Plaintiffs' complaint was properly dismissed, and their motion to vacate the dismissal was properly denied. In response to Supreme Court's validly issued order pursuant to CPLR 3216, plaintiffs took no steps to complete discovery or file their note of issue. Upon moving to vacate the dismissal, plaintiffs failed to offer a reasonable excuse for their default or demonstrate the existence of a meritorious claim. (*Baczkowski v Collins Constr. Co.*, 89 NY2d 499; *Fenner v County of Nassau*, 80 AD3d 555; *Walker v City of New York*, 46

AD3d 278; *Blackmon v Meo*, 284 AD2d 711, 97 NY2d 602; *Burridge v Gaines*, 281 AD2d 967; *Smith v Montefiore Med. Ctr.*, 60 AD3d 479; *Huger v Cushman & Wakefield, Inc.*, 58 AD3d 682; *Melius v Pletman*, 202 AD2d 880, 84 NY2d 903; *McDonald v Montefiore Med. Ctr.*, 60 AD3d 547; *McKinney v Corby*, 295 AD2d 580.)

*Steinberg, Symer & Platt, LLP*, Poughkeepsie (*Jonathan Symer* and *Ellen Fischer Bopp* of counsel), for Good Samaritan Hospital, respondent. I. The initial dismissal of the action on December 31, 2007 was appropriate. (*Heredia v Two Kings*, 4 AD3d 153; *Dhaliwal v Long Boat Taxi*, 305 AD2d 449; *Giannoccoli v One Cent. Park W. Assoc.*, 15 AD3d 348; *Goldberg v Tunstall*, 295 AD2d 315; *Kihl v Pfeffer*, 94 NY2d 118.) II. The Supreme Court's denial of the original motion to vacate the dismissal was appropriate and within its discretion. (*Baczkowski v Collins Constr. Co.*, 89 NY2d 499; *Davis v Cardiovascular Consultants of Long Is., P.C.*, 65 AD3d 1076; *Petersen v Lysaght, Lysaght & Kramer, P.C.*, 47 AD3d 783; *Fenner v County of Nassau*, 80 AD3d 555; *Bort v Perper*, 82 AD3d 692; *Cato v City of New York*, 70 AD3d 471; *Palumbo v Dell*, 73 AD3d 723; *Rocha-Silva v St. John's Hosp.*, 70 AD3d 1025; *Blackmon v Meo*, 284 AD2d 711; *Burridge v Gaines*, 281 AD2d 967.) III. CPLR 205 (a) is inapplicable to this review, and in any event would not result in reversal even if applied. (*State of New York v Daicel Chem. Indus., Ltd.*, 42 AD3d 301; *Aguaiza v Vantage Props., LLC*, 69 AD3d 422; *Matter of Kahn [National City Bank]*, 284 NY 515; *Gallewski v Hentz & Co.*, 301 NY 164; *Robinson v Robins Dry Dock & Repair Co.*, 238 NY 271; *Matter of Asman v Ambach*, 64 NY2d 989; *Matter of Alscot Inv. Corp. v Incorporated Vil. of Rockville Ctr.*, 64 NY2d 921; *Matter of Mascony Transp. & Ferry Serv. v Richmond*, 71 AD2d 896; *Black Riv. Regulating Dist. v Adirondack League Club*, 307 NY 475; *Matter of Tartaglia v McLaughlin*, 297 NY 419.)

*McAloon & Friedman, P.C.*, New York City (*Gina Bernardi Di Folco* of counsel), for Montefiore Medical Center, respondent. I. The December 27, 2007 dismissal was proper. (*Baczkowski v Collins Constr. Co.*, 89 NY2d 499; *Walker v City of New York*, 46 AD3d 278; *Felix v County of Nassau*, 52 AD3d 653; *Huger v Cushman & Wakefield, Inc.*, 58 AD3d 682; *McDonald v Montefiore Med. Ctr.*, 60 AD3d 547.) II. Plaintiff failed to demonstrate a reasonable excuse or a meritorious case. (*Walker v City of New York*, 46 AD3d 278; *Lopez v Imperial Delivery Serv.*, 282 AD2d 190, 96 NY2d 937; *Rijo v McLaughlin*, 309 AD2d 716; *Felix v*

*County of Nassau,* 52 AD3d 653; *Betty v City of New York,* 12 AD3d 472; *Campos v New York City Health & Hosps. Corp.,* 307 AD2d 785; *Markarian v Hundert,* 180 AD2d 780; *Davis v Goodsell,* 6 AD3d 382; *McCracken v Nitto Kohki USA,* 271 AD2d 510; *Donegan v St. Joseph's Med. Ctr.,* 283 AD2d 152.) III. CPLR 205 does not mandate vacatur. (*Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.],* 5 NY3d 514; *Doyle v American Home Prods. Corp.,* 583 F3d 167; *Boardman v Glissando Enters. of N. J.,* 41 AD2d 523; *Levy v Kelly Assoc.,* 20 AD2d 772; *Sortino v Fisher,* 20 AD2d 25; *People ex rel. Burby v Howland,* 155 NY 270.)

*Clausen Miller, P.C.,* New York City (*Edward M. Tobin* of counsel), for Louis May, M.D., respondent. I. The Appellate Division, First Department, properly determined that the trial court did not abuse its discretion in denying plaintiffs' motion to vacate the dismissal. (*Lopez v Imperial Delivery Serv.,* 282 AD2d 190; *Townsend v Merrill Lynch Futures,* 187 AD2d 326; *Frank L. Ciminelli Constr. Co. v City of Buffalo,* 110 AD2d 1075; *Walker v City of New York,* 46 AD3d 278; *Smith v Montefiore Med. Ctr.,* 60 AD3d 479; *Arts4All, Ltd. v Hancock,* 54 AD3d 286; *Seletsky v St. Francis Hosp.,* 263 AD2d 452; *Safina v Queens-Long Is. Med. Group,* 238 AD2d 395; *Migdol v City of New York,* 291 AD2d 201.) II. The amended version of CPLR 205 (a) does not apply to this action. (*Campos v New York City Health & Hosps. Corp.,* 307 AD2d 785; *Wilson v Galicia Contr. & Restoration Corp.,* 8 AD3d 560; *AWL Indus., Inc. v QBE Ins. Corp.,* 65 AD3d 904; *Foster v Dealmaker, SLS, LLC,* 63 AD3d 1640; *Ragubir v 44 Ct. St., LLC,* 60 AD3d 833; *Du Valle v Swan Lake Resort Hotel, LLC,* 26 AD3d 616; *Juracka v Ferrara,* 137 AD2d 921; *Gager v White,* 53 NY2d 475; *Jacobus v Colgate,* 217 NY 235; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577.)

**OPINION OF THE COURT**

PIGOTT, J.

In May 2003, plaintiffs Juliette and Jean Cadichon commenced a medical malpractice action against defendants Thomas Facelle, M.D., Good Samaritan Hospital and Montefiore Medical Center for injuries allegedly sustained by Mrs. Cadichon during surgery in July 2002. The trial court executed a preliminary and compliance conference order in August 2003 and May 2004, respectively, concerning the parties' discovery obligations and examinations before trial.

After plaintiffs commenced a separate medical malpractice action against defendant Dr. May—which was consolidated with

the action against the other defendants in May 2006—plaintiffs and Dr. May agreed to their discovery obligations in an April 2005 preliminary conference order. Once the cases were consolidated in May 2006, another compliance conference order was prepared, setting forth the parties' discovery obligations, directing that all examinations before trial be completed by September 13, 2006, and stating that plaintiffs were to file their note of issue and certificate of readiness by November 2006.

At issue on this appeal is the May 3, 2007 stipulation. At the time this stipulation was executed by the trial court and the parties, plaintiffs had complied with all discovery obligations, and Mrs. Cadichon had been deposed twice, once before and once after the consolidation of the actions. The order directed that Dr. Facelle be deposed by June 26, 2007; Dr. May by July 10, 2007; and representatives of Good Samaritan Hospital and Montefiore Medical Center by August 21, 2007, with plaintiffs providing the hospital defendants with 30 days notice as to the names of the representatives plaintiffs wished to depose. The stipulation also directed plaintiffs' counsel to file the note of issue on or before December 27, 2007.

Also served upon and signed by plaintiffs' counsel was a "**DEMAND FOR SERVICE AND FILING OF NOTE OF ISSUE**" which states as follows:

"**THE COURT DEMANDS, PURSUANT TO C.P.L.R. 3216, THAT YOU RESUME PROSE- CUTION OF THE ABOVE ENTITLED ACTION, AND THAT YOU SERVE AND FILE A NOTE OF ISSUE [AS PER THE ANNEXED ONE PAGE STIPULATION DATED 5/3/07, I.E., BY 12/27/07][1] AFTER THE RECEIPT OF THIS DEMAND.**

"**YOUR DEFAULT IN COMPLYING WITH THIS DEMAND WITHIN THE 90-DAY PERIOD *WILL SERVE AS A BASIS* FOR THE COURT, *ON ITS OWN MOTION*, TO DISMISS THE ACTION FOR UNREASONABLY NEGLECTING TO PROCEED**" (emphasis supplied).

December 27, 2007 came and went. Plaintiffs did not file their note of issue by that date, allegedly because defendants had still not been deposed. Unbeknownst to the parties, the case was

---

1. The bracketed portion represents the trial court's handwriting.

dismissed on December 31, 2007 and, for the first few months of the new year, plaintiffs attempted to schedule deposition dates, the court having failed to inform any of the parties of the case's dismissal. Counsel for Dr. Facelle agreed to produce his client for a deposition on April 7, 2008. Around that same time, in March 2008, Good Samaritan Hospital moved to dismiss the action, but those papers were returned to it by the Clerk's Office on the ground that the motion was moot. This was the earliest that any of the litigants had learned that the matter had been dismissed.

Supreme Court denied plaintiffs' motion to vacate the dismissal pursuant to CPLR 3216, and the Appellate Division, in a 3-2 decision, affirmed (71 AD3d 520 [2010]). Plaintiffs appeal as of right on the two-Justice dissent. We previously determined that the Appellate Division order should be deemed the final appealable paper for purposes of this Court's jurisdiction (15 NY3d 877, 879 [2010]), and we now reverse.

CPLR 3216 (a) provides that

> "[w]here a party unreasonably neglects to proceed generally in an action or otherwise delays in the prosecution thereof against any party who may be liable to a separate judgment, or unreasonably fails to serve and file a note of issue, the court, on its own initiative or upon motion, may dismiss the party's pleadings on its terms."

A case cannot be dismissed pursuant to CPLR 3216 (a), however, unless a written demand is served upon "the party against whom such relief is sought" in accordance with the statutory requirements, along with a statement that the "default by the party upon whom such notice is served in complying with such demand within said ninety day period *will serve as a basis for a motion* by the party serving said demand for dismissal as against him for unreasonably neglecting to proceed" (CPLR 3216 [b] [3] [emphasis supplied]).

Here, the action was apparently "dismissed" on December 31, 2007. But there is no order of dismissal to that effect, as evidenced by the parties' conduct in scheduling depositions as if the case were still active. Defendants point to the stipulation, claiming that once the plaintiffs failed to file their note of issue, the trial court was within its right to dismiss the action. It is evident from the 90-day demand and the dictates of CPLR 3216 that the plaintiffs' failure to comply with the demand would

"serve as a basis" for the trial court, on its own motion, to dismiss the action. That is not what occurred here; there is no evidence in the record that the trial court made a motion to dismiss the action in this case, and it is apparent that the case was dismissed based upon plaintiffs' failure to comply with the May 3, 2007 stipulation and 90-day demand in doing so. Indeed, there was apparently no "order" of the court dismissing the case and, at best, only a ministerial dismissal of the action without benefit of further judicial review even though the stipulation provided that it only "will serve as a basis for the *court, on its own motion*" (emphasis supplied) to take further action.

Although inapplicable to this case, the July 7, 2008 amendment to CPLR 205 (a),[2] which, as relevant here, states that where a dismissal is one for neglect to prosecute, "the judge shall set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation," underscores that dismissal of a claim under circumstances such as this involves judicial involvement. It is evident from this record that the case was ministerially dismissed, without notice to the parties, without the entry of any formal order by the court dismissing the matter.

It is apparent from this record that neither plaintiffs nor defendants acted with expediency in moving this case forward. We have noted, repeatedly, that "[l]itigation cannot be conducted efficiently if deadlines are not taken seriously . . . [and] that disregard of deadlines should not and will not be tolerated" (*Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514, 521 [2005], citing *Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725 [2004]; *Brill v City of New York*, 2 NY3d 648 [2004]; *Kihl v Pfeffer*, 94 NY2d 118 [1999]). But where, as here, the case proceeds to the point where it is subject to dismissal, it should be the trial court, with notice to the parties, that should make the decision concerning the fate of the case, not the Clerk's Office.

---

2. The Legislature enacted this amendment to remedy a "persistent problem within our courts regarding dismissal for neglect to prosecute," noting that "[t]he intent of CPLR §205(a) has been misconstrued allowing for many cases to be dismissed" on the ground because the law had been "unclear with respect to what specifically constitute[d] a neglect to prosecute" (Assembly Mem in Support, Bill Jacket, L 2008, ch 156, at 6).

Therefore, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and plaintiffs' complaint should be reinstated.

GRAFFEO, J. (dissenting). Although it may not be apparent from the majority writing, the issue before us is whether the courts below abused their discretion in declining to reinstate plaintiffs' claim after it was dismissed as a consequence of their undisputed failure to comply with a CPLR 3216 90-day demand to file a note of issue. Because I discern no abuse of discretion, I would affirm.

The majority reinstates plaintiffs' complaint based on their conclusion that the purported "ministerial" dismissal of the claim was erroneous because it was not preceded by a motion on notice—an argument that plaintiffs have not asserted at any stage of this proceeding. The majority therefore decides this case on an unpreserved issue that was never raised in the parties' submissions. The approach is also misguided because the fact that the prior dismissal was not preceded by such a motion could not have had any material effect on the rights of the parties. If Supreme Court had sua sponte initiated a motion on notice to dismiss plaintiffs' claim based on failure to comply with the 90-day demand as the majority suggests should have occurred, plaintiffs would still have had to meet the CPLR 3216 standard in order to avoid dismissal—the same standard Supreme Court applied to determine the motion to vacate the order of dismissal. Since plaintiffs failed to meet the statutory standard (a conclusion that the majority does not dispute), they are not entitled to reinstatement of their claim. Accordingly, I respectfully dissent.

## I.

In 2003 and 2005, plaintiffs Juliette and Jean Philippe Cadichon commenced separate medical malpractice actions against two physicians and two hospitals arising from treatment Mrs. Cadichon received following the surgical removal of her gallbladder. A series of scheduling orders were issued directing discovery and imposing deadlines for plaintiffs to take certain actions, including the filing of a note of issue. The actions were consolidated in May 2006 and a compliance conference was conducted by Supreme Court in May 2007.

At that time, with significant discovery remaining outstanding, the parties agreed that the depositions of defendants

would be conducted by specified deadlines and that the note of issue would be filed by December 27, 2007. In particular, the stipulation directed (1) that the deposition of Dr. Thomas Facelle be completed on or before June 26, 2007; (2) that the deposition of Dr. Louis May be completed on or before July 10, 2007; (3) that the deposition of Good Samaritan Hospital be completed on or before August 21, 2007, with a direction that plaintiffs' counsel designate a witness to depose from that hospital 30 days prior to the deposition; and (4) that the deposition of Montefiore Medical Center be completed on or before August 21, 2007, again with the caveat that plaintiffs were to designate a witness from that hospital 30 days prior to the examination. Defendants also agreed to complete any independent medical examinations of plaintiff Juliette Cadichon prior to July 16, 2007. The stipulation was then "so ordered" by the court. This was the fifth scheduling order issued by the court.

In addition, Supreme Court sua sponte issued a separate **"DEMAND FOR SERVICE AND FILING OF NOTE OF ISSUE"** reiterating that plaintiffs were required to file a note of issue on or before December 27, 2007. The demand was accompanied by a warning advising plaintiffs: **"YOUR DEFAULT IN COMPLYING WITH THIS DEMAND WITHIN THE 90-DAY PERIOD WILL SERVE AS A BASIS FOR THE COURT, ON ITS OWN MOTION, TO DISMISS THE ACTION FOR UNREASONABLY NEGLECTING TO PROCEED."** Plaintiffs' attorney acknowledged receipt of the demand by signing the document in the presence of the court.

During the period between the issuance of the court's May 2007 order and the December 27, 2007 note of issue deadline, plaintiffs did not schedule or conduct the depositions of the physician defendants, nor did they identify the witnesses they sought to depose from the hospitals, a condition precedent to conducting those depositions. Hence, plaintiffs failed to file a note of issue by December 27, 2007 as required by the court's demand. Plaintiffs also did not undertake to contact the court during this time period, either to seek an extension or amendment of the scheduling order, to move to compel the depositions or to secure other assistance in relation to completion of discovery. Instead, plaintiffs' attorneys allowed the court's note of issue deadline to pass without

explanation and, as a consequence, plaintiffs' medical malpractice action was dismissed in December 2007.[1]

In April 2008, plaintiffs' counsel moved to vacate the dismissal of the action, contending that plaintiffs should not be held accountable for failing to timely file a note of issue because defendants had delayed the completion of discovery. Plaintiffs' attorneys argued that they had no obligation to present a justifiable excuse for the default or offer an affidavit establishing the merit of their claim as required by CPLR 3216 because they asserted that defendants had stymied any efforts to complete discovery by failing to appear for their depositions.

All of the defendants opposed the motion and cross-moved for the issuance of a judgment memorializing dismissal of the claim. They denied having obstructed the completion of discovery and maintained that plaintiffs' attorneys had made no attempt to schedule defendants' depositions within the deadlines established in the scheduling order.

In response, an attorney from plaintiffs' law firm submitted an affirmation averring that he tried to schedule the deposition of Dr. Facelle by making "numerous" telephone calls to the deposition clerk at the doctor's law firm. Plaintiffs' attorney did not indicate that attempts were made to schedule the remaining depositions. Plaintiffs also submitted an affirmation of an unidentified physician who attested to the merit of plaintiffs claims, at least with respect to some of the defendants. In surreply papers, defendants argued that plaintiffs' belated excuse for the delay was inadequate and they challenged the sufficiency of the affidavit of merit.

In an August 2008 order, Supreme Court denied plaintiffs' motion to vacate the dismissal of the action. The court noted that it had personally served plaintiffs' counsel with the demand directing the filing of a note of issue by December 27, 2007 and stating that lack of compliance with the demand would result in dismissal. Applying the CPLR 3216 standard, the court concluded that plaintiffs' proffered excuse for the default was

---

1. The majority presumes that the complaint was dismissed by a clerk without any participation from the court. But this assumption finds no support in the record. Because plaintiffs never argued that the court lacked the authority to sua sponte dismiss the complaint as a consequence of the default in filing a note of issue, the circumstances surrounding the so-called "ministerial" dismissal of the complaint were never developed. In fact, in plaintiffs' motion to vacate the dismissal, plaintiffs' attorneys represented that "the Court, on its own accord, disposed" of the case.

inadequate because counsel did not specify what steps he took to schedule the depositions of defendants, beyond placing a few telephone calls. "At no time did plaintiff[s' counsel] sen[d] a letter, make a motion to compel the deposition[s], make a motion to strike defendant's answer[s] or simply make a motion to extend the time to file the note of issue." Finally, the court concluded that the affidavit of merit was insufficient to sustain a claim against the two hospitals as it is silent as to any departures from the standard of care attributable to those defendants.[2]

On plaintiffs' appeal, the Appellate Division affirmed, with two Justices dissenting (71 AD3d 520 [2010]). The majority concluded that Supreme Court had not abused its discretion in finding that plaintiffs failed to meet their CPLR 3216 burden of establishing a justifiable excuse for the failure to timely file a note of issue. The dissent would have reinstated the complaint, but not on the grounds relied on by the majority in this Court. Rather, the Appellate Division dissenters concluded that the discovery delays were attributable to defendants and that plaintiffs established both a justifiable excuse and a meritorious cause of action as required by CPLR 3216. Plaintiffs appeal as of right on the two-Justice dissent.

## II.

I believe that the focus in this case should be on CPLR 3216, which governs dismissals arising from the neglect to timely prosecute an action. It provides:

> "Where a party unreasonably neglects to proceed generally in an action or otherwise delays in the prosecution thereof against any party who may be liable to a separate judgment, or unreasonably fails to serve and file a note of issue, the court, on its own initiative or upon motion, may dismiss the party's pleading on terms" (CPLR 3216 [a]).

We have characterized this statute as "extremely forgiving of . . . delay" because subdivision (b) precludes a court from terminating an action unless three preconditions are met: more

---

**2.** Plaintiffs moved for renewal and reargument but that motion was denied. Because plaintiffs' appeal from the renewal/reargument order was dismissed by this Court, any reference to the facts asserted and legal arguments made in that motion have been stricken from the record and from plaintiffs' briefs in this Court.

than one year must have elapsed since joinder of issue; the party must have been served with a written demand to serve and file a note of issue within 90 days;[3] and the party must have failed to meet the deadline in the written demand (*see Bacz-kowski v Collins Constr. Co.*, 89 NY2d 499, 502-503 [1997]; *see also Di Simone v Good Samaritan Hosp.*, 100 NY2d 632 [2003]). Moreover, if a plaintiff meets the deadline, all prior delay in prosecution is forgiven (*see generally* CPLR 3216 [c]). On the other hand,

> "[i]n the event that the party upon whom is served the demand specified in subdivision (b)(3) of this rule fails to serve and file a note of issue within such ninety day period, the court may take such initiative or grant such motion unless the said party shows justifiable excuse for the delay and a good and meritorious cause of action" (CPLR 3216 [e]).

Although the majority fails to address the plain language of the statute, it is important to note that CPLR 3216 (a) expressly grants a trial court the authority to either sua sponte dismiss the claim or await a motion to dismiss from a defendant (if plaintiff "unreasonably fails to serve and file a note of issue, the court, on its own initiative *or* upon motion, may dismiss the party's pleading" [emphasis added]).

Regardless of whether a defendant moves to dismiss in the first instance or the court initiates the dismissal, prompting a motion to vacate, the statutory standard for resolving the application is the same—to avoid dismissal or secure reinstatement of the litigation a plaintiff must show a justifiable excuse for the delay and a meritorious claim. For this reason, although the majority concludes otherwise, it is irrelevant that the court initially sua sponte dismissed the complaint rather than waiting for one of the defendants to make a motion to dismiss on notice. The parties addressed the same issues—raising the same factual and legal arguments—in the motion to vacate the dismissal as would have been raised in a motion to dismiss. In reinstating the complaint on a procedural basis not advanced by plaintiffs, the majority fails to explain why it ignores the substantial motion practice in Supreme Court in which the parties litigated

---

**3.** The statute directs that the 90-day demand may be served by "[t]he court or party seeking such relief," as long as the demand warns that the failure to timely file the note of issue pursuant to the demand may serve as a basis to dismiss the action (CPLR 3216 [b] [3]). That requirement was met here.

whether plaintiffs met the CPLR 3216 standard for excusing their default. I can only assume that the majority has charted this course instead of addressing the CPLR 3216 arguments actually raised by the parties because plaintiffs in fact failed to meet the statutory standard, as both Supreme Court and the Appellate Division concluded.

That conclusion is supported by our precedent. We have considered the propriety of CPLR 3216 dismissals on at least two occasions, in *Baczkowski* and *Di Simone*. In the former, it was defendant that filed the 90-day demand for the filing of a note of issue (not the court, as occurred in this case). In response to defendant's subsequent motion to dismiss made after plaintiff missed the deadline, the plaintiff proffered two excuses for the delay: that "uncertainty over pending third-party discovery excused the delay" and that a secretary from the law firm representing plaintiff had attempted to file a note of issue after the deadline passed but was not permitted to do so (89 NY2d at 504). We determined that both were inadequate because plaintiff failed to demonstrate an appropriate and timely effort to comply with the 90-day demand. We were troubled by the fact that plaintiff not only defaulted on the obligation to file the note of issue but had also neglected to "take any other step indicating an intention to resume prosecution of the action, such as moving to vacate the 90-day demand or seeking an extension of time within which to file a note of issue" (*id.* at 503-504). We therefore held that Supreme Court had abused its discretion in denying defendant's motion to dismiss but the Appellate Division had rectified that error by reversing Supreme Court's order and dismissing plaintiff's claim. In contrast, in *Di Simone*, because plaintiff had established a meritorious claim and demonstrated that the failure to comply with a 90-day demand was excusable as it was a consequence of her attorney's disbarment and the resulting lapse of representation during the relevant time period, we held that the Appellate Division abused its discretion in dismissing the cause of action.

Our analysis in prior CPLR 3216 cases is consistent with the approach this Court has repeatedly taken over the past decade in comparable circumstances. Until today, in decision after decision, we have held that dilatory actions by attorneys that unjustifiably delay the course of litigation—including delays in conducting discovery, delays in filing summary judgment motions or delays in proceeding to trial through the filing of a note

of issue—cannot be overlooked (*see e.g. Gibbs v St. Barnabas Hosp.*, 16 NY3d 74 [2010]; *Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725 [2004]; *Brill v City of New York*, 2 NY3d 648 [2004]; *Kihl v Pfeffer*, 94 NY2d 118 [1999]).[4] In an effort to encourage fairness and appropriate professional practice standards, we have emphasized that

> "our court system is dependent on all parties engaged in litigation abiding by the rules of proper practice . . . The failure to comply with deadlines not only impairs the efficient functioning of the courts and the adjudication of claims, but it places jurists unnecessarily in the position of having to order enforcement remedies to respond to the delinquent conduct of members of the bar, often to the detriment of the litigants they represent. Chronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules and a culture in which cases can linger for years without resolution . . . For these reasons, it is important to adhere to the position we declared a decade ago that if the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity" (*Gibbs*, 16 NY3d at 81 [internal quotation marks, brackets and citations omitted]).

In applying the rules set by the Legislature in the CPLR, we have never suggested that we do not appreciate the difficulties and practice pressures experienced by members of the trial bar. Certainly, the time and effort needed to identify and secure appropriate expert witnesses, along with other relevant evidence, prior to conducting depositions or complying with other discovery demands may, in some circumstances, result in

---

4. In *Gibbs* (16 NY3d 74 [2010]), where plaintiff's counsel violated a conditional preclusion order by failing to supply a bill of particulars and did not establish good cause for the delay and a meritorious claim, we held that the trial court abused its discretion in failing to order preclusion. In *Miceli* (3 NY3d 725 [2004]), where the moving party's attorney failed to file a summary judgment motion within 120 days of the filing of a note of issue and did not demonstrate good cause for the delay, Supreme Court erred in granting summary judgment to the movant (*see also Brill*, 2 NY3d 648 [2004] [same; clarifying that good cause means a reasonable excuse for the delay in making the motion]). And in *Kihl* (94 NY2d 118 [1999]), where the law firm representing plaintiff failed to adequately respond to discovery demands, disregarding a time limit in a conditional dismissal order, we held that the trial court properly granted defendant's motion to dismiss the complaint.

considerable delays, even when there have been diligent attempts to comply with discovery orders. But based on our precedent it is evident that, rather than merely ignoring court-ordered deadlines, the proper recourse—both to fulfill the professional obligations owed the client and in respect for the courts—is to timely ask for an extension from one's adversary, move to compel discovery from a recalcitrant party, request a preclusion order or otherwise seek judicial assistance in resolving discovery disputes. In light of the various informal and statutory options available to counsel to address legitimate delays, extensive periods of inactivity that result in the violation of court orders should not be lightly condoned, particularly where trial judges have made repeated attempts to spur the parties to complete discovery as occurred here.

After all, litigation is an uncertain business for both plaintiffs and defendants and neither side benefits when disputes are unnecessarily protracted. Plaintiffs are entitled to prompt resolution of their claims—they have a legitimate need to know whether they have a viable cause of action and, if so, to secure adequate compensation for their injuries within reasonable time constraints. This is especially true in cases that involve seriously injured plaintiffs who may be unable to work and may suffer physical and financial hardship while their lawsuits are pending. Similarly, defendants are anxious to learn whether they will be held responsible for the claims made against them and, if so, the extent of the judgment that will be imposed.

Litigants therefore desire and deserve a court system that administers justice in a fair, respectful and reasonably efficient manner. It is this policy that the Legislature has endeavored to advance by fashioning rules governing the progress of litigation, such as the procedure in CPLR 3216 for enforcement of a 90-day demand for filing of a note of issue. And, in my view, it is the role of the courts to ensure that all parties comply with the relevant statutory directives. Because I believe that these principles should inform the resolution of this case, I turn to the traditional analysis we have applied in CPLR 3216 dismissal cases.

### III.

Under CPLR 3216, the issue for resolution is whether, as a matter of law, the courts below erred in concluding that plaintiffs failed to establish a justifiable excuse for the default in filing the note of issue. In their motion to vacate the

dismissal of the complaint, plaintiffs initially took the position that they had no obligation to offer either a reasonable explanation for their undisputed lack of compliance with the 90-day demand or to supply any materials establishing a bona fide claim. However, this assertion is inconsistent with CPLR 3216, which permits a court to dismiss the claim based on a failure to meet the note of issue deadline unless plaintiff meets the two-part test thereby excusing that default (*see* CPLR 3216 [e]). To be sure, even when a plaintiff proffers an inadequate excuse or insufficient affidavit of merit, the court continues to possess some discretion to decline to dismiss the claim. But the fact that a court is not compelled to terminate the action does not absolve a plaintiff of the need to address the statutory standards.

Here, read in their entirety, the papers submitted in support of plaintiffs' vacatur motion suggest two excuses for the delay: a claim that defendants thwarted plaintiffs' efforts to complete the depositions directed in the scheduling order and an allegation that plaintiffs' lawyers had adequately fulfilled their obligations in relation to the depositions since an unnamed clerk at the law firm representing Dr. Facelle had been telephoned several times in an effort to schedule the physician's deposition.[5] Based on the record, I cannot say, as a matter of law, that the courts below erred in finding these excuses to be insufficient to justify vacatur of the dismissal.

No doubt, the court's May 2007 conference—resulting in the fifth scheduling order issued in relation to these medical malpractice claims—was intended to light a fire under all of the parties' representatives, both plaintiffs' counsel and the four law firms appearing for defendants. None of the parties involved in this case is deserving of praise—the record indicates that both sides were less than expeditious in responding to earlier discovery orders. But the court dismissed the claim based on plaintiffs' failure to file a note of issue within the time frame directed in the "so ordered" stipulation and demand. The stipulation mandated that the depositions be conducted "on or before" specified dates. Thus, the stipulation contained

---

5. As discussed by the Appellate Division dissenters, plaintiffs proffered a third excuse—law office failure—in their motion for renewal/reargument (*see* 71 AD3d at 523). I have not considered this belated argument because the renewal/reargument order is not before this Court for review and we have stricken all papers relating to that motion from the briefs and record on appeal.

deadlines—it did not actually set forth the time, place or location of any particular deposition.[6] As the party that sought to conduct the depositions, the onus was necessarily on plaintiffs to arrange the dates certain for the examinations before trial, a process that entailed selecting a time and location, notifying the affected parties and securing the services of a stenographer. Plaintiffs' attorneys could have set a date for the depositions by any one of several means: by letter, telephone call or pursuant to CPLR 3107, which permits a party to serve a notice "to take the deposition of any person upon oral examination" on 20 days notice "in writing, stating the time and place for taking the deposition." If one of these procedures failed to secure results, they were required to try another—or seek further assistance from the court.

The only record evidence of any attempt made by plaintiffs' counsel to actually schedule the depositions during the relevant time period were statements that one lawyer "placed numerous phone calls to the deposition clerk" at the law firm representing Dr. Facelle and was told that his calls would be returned. But Supreme Court did not abuse its discretion in concluding that these purported efforts were insufficient to justify plaintiffs' failure to timely schedule and conduct Dr. Facelle's deposition—much less the depositions of the remaining defendants, who were each separately represented. On this record, plaintiffs' failure to complete discovery cannot fairly be attributed to defendants, who apparently waited for plaintiffs to take further measures consistent with the scheduling order. Even if plaintiffs' conclusory claim that defendants thwarted their discovery efforts and failed to schedule plaintiffs' medical examinations is credited, this would not warrant vacating plaintiffs' default because the CPLR provided plaintiffs with other means for redress, including moving to compel disclosure pursuant to CPLR 3124 or moving to strike defendants' answers pursuant to CPLR 3126 (3) or CPLR 2004.

Furthermore, plaintiffs' action was not dismissed because they failed to conduct depositions—the dismissal was a

---

6. Although plaintiffs assert that defendants violated the scheduling order when they failed to produce their clients on the deadlines in the court order, the record indicates that plaintiffs did not set specific dates, times or locations for the oral examinations. Under the circumstances, defendants could not have been expected to appear with their clients (indeed, the hospital witnesses had not been identified)—nor do plaintiffs indicate that they were waiting at a designated place with a stenographer on any particular day or time, ready, willing and able to conduct the depositions.

consequence of plaintiffs' default in filing a note of issue. Again, if plaintiffs could not meet the deadline set by the court, they should have taken appropriate steps prior to the due date such as moving for permission to serve and file a conditional note of issue (noting the outstanding discovery) or moving for an extension of time to file the note of issue. Certainly, it's not unusual that, despite diligent efforts, an attorney is unable to comply with a court order or meet a statutory deadline. When this occurs, it is imperative that relief be sought from the court before the default occurs. Plaintiffs failed to do so in this case, providing ample basis in the record for the conclusion reached by the courts below that there was no adequate justification for allowing the note of issue deadline to pass without making reasonable efforts to comply with the court's mandate, especially given the history of this litigation in which the parties had permitted four prior scheduling orders to expire without undertaking discovery.

Because I discern no abuse of discretion in the determination of the courts below that plaintiffs failed to establish a justifiable excuse for noncompliance with the "so ordered" stipulation and court-issued demand, there would be no basis to disturb the order denying vacatur of the dismissal even if the affidavit of merit had been sufficient as to all party defendants. Therefore, a discussion of the second requirement of the CPLR 3216 standard is unnecessary to my analysis.

Finally, the Court is apparently unanimous in its conclusion that we may not entertain plaintiffs' argument that Supreme Court's order denying the motion to vacate was erroneous due to the court's failure to apply a new standard imposed in a July 2008 amendment to CPLR 205 (a)—a statute that addresses when a plaintiff may recommence an action that has been dismissed on a basis unrelated to the merits. The majority notes that this new provision is inapplicable to this case and I agree. Even crediting the assertion that the new CPLR 205 (a) language applies when there has been no attempt to recommence an action following dismissal (as is the case here), the amendment did not become effective until seven months after Supreme Court dismissed plaintiffs' claim. Moreover, the CPLR 205 (a) argument is not preserved for our review because it was not raised in the motion to vacate the dismissal.

None of us likes to see a case dismissed as a result of a procedural default—we all would prefer to have personal injury actions resolved on the merits. However, there are times when

the public policy favoring the resolution of tort claims on the merits must yield to equally important though countervailing concerns—such as the proper enforcement of statutory mandates and court orders. In my view, this is such a case. By consistently applying CPLR mandates, courts encourage a culture of compliance regarding the rules of procedure and an appropriate respect for the integrity of the judicial system—a result that inures to the greater good of all who participate in the litigation process. Because the court steps away from the important policy considerations embodied in the governing statute—CPLR 3216—I feel compelled to dissent.

Chief Judge LIPPMAN and Judges CIPARICK and JONES concur with Judge PIGOTT; Judge GRAFFEO dissents and votes to affirm in a separate opinion in which Judges READ and SMITH concur.

Order, insofar as appealed from, reversed, etc.