OPINION OF THE COURT
Austin, J.
The question presented on this appeal is what sanction, if any, is appropriate under CPLR 3126 when a party, in response to a court’s discovery order, provides belated, false, incomplete, or misleading information as to material issues before attempting to supplement its discovery responses after the filing of the note of issue.
*203 On the afternoon of June 25, 2008, the plaintiff Dominic Arpiño was driving his motorcycle on Sunrise Highway in Babylon when he collided with a Ford Explorer owned by the defendant F.J.F. & Sons Electric Co., Inc. (hereinafter FJF), and driven by the defendant Thomas Foronjy. Although there was a passenger in the FJF vehicle who witnessed the accident, only the identities of the two drivers, the plaintiff and Foronjy, were referenced in the police accident report.
The plaintiff subsequently commenced this action against Foronjy and FJF in July 2008 to recover damages for his personal injuries allegedly caused by the defendants’ negligence. Issue was joined on August 20, 2008.
Less than three months later, on November 6, 2008, the plaintiff served upon the defendants his combined discovery demands. Among other things, the plaintiffs combined discovery demands sought information concerning any witnesses to the accident. The plaintiffs demand instructed the defendants that “[i]f no such witnesses are known to any party represented by you, so state in the sworn reply to this demand. The undersigned will object upon the trial of this action to testimony of any witnesses not so identified.” The plaintiffs combined discovery demands also sought “[a]ny photographs, slides, videotapes or motion pictures ... of [a]ny instrumentality involved ... as may be relevant to the issues alleged in the pleadings, taken by or in the possession of any party you represent or in your possession as attorney(s).” Although a response to the plaintiffs combined discovery demands was due within 20 days of the date of service, it is undisputed that the defendants failed to serve any response at all within the 20-day period.
The plaintiffs’ combined discovery demands were still outstanding when a preliminary conference was held on December 3, 2008. The preliminary conference stipulation and order (hereinafter the preliminary conference order), which was consented to and executed by counsel for the parties, required the parties to exchange witness information and photographs on or before January 12, 2009. The preliminary conference order further provided that if there were no witnesses or photographs, an affirmation to that effect was to be provided.
Although compliance with the preliminary conference order was due by January 12, 2009, no response was provided by the defendants by that date. Instead, in an attempt to comply with the preliminary conference order, a paralegal for the defendants’ attorney, in violation of 22 NYCRR 130-1.1-a, represented, *204 in a letter to the plaintiffs attorney dated January 23, 2009, that “[w]e do not have any photographs of the scene, injuries or vehicles involved” and “[w]e are not aware of eye/notice/ admission witnesses other than those listed in public records and/or already exchanged between parties hereto.”
On May 15, 2009, the plaintiff conducted a deposition of Foronjy. During Foronjy’s deposition, it was revealed for the first time, in contradiction to the January 23, 2009, letter of defense counsel’s paralegal, that an FJF employee, Danny Heffron, was also in the FJF vehicle driven by Foronjy at the time of the accident. Foronjy testified that Heffron and he had just left a job site where FJF was performing electrical work on a commercial building and were on their way to Heffron’s house when the accident occurred. Foronjy provided Heffron’s address during the deposition.
Foronjy further revealed at his deposition that, in addition to Heffron, there may have been other witnesses to the accident. Foronjy identified one of the potential witnesses as a fellow FJF employee, “Brian Ester,”[1] indicating that “Ester” pulled over on Sunrise Highway after the accident and told him that he had seen it. He added that “Ester” lived in Farmingdale, but he did not know “Ester’s” home address. Foronjy also “guess[ed]” that “some people on the job site . . . someone working on the roof or on the building,” may have been witnesses. When asked if anyone else told him that he or she witnessed the accident, Foronjy responded “no.”
After Foronjy’s deposition, the plaintiff served a further notice for discovery and inspection dated May 22, 2009, which sought, among other things, photographs depicting post-incident damage to the defendants’ vehicle. By letter dated June 9, 2009, the defendants’ attorney responded that “[u]pon information and belief the Defendants are not currently in possession of any photographs depicting post-incident damage to Defendants’ vehicle” (emphasis supplied).
A compliance conference was held on September 16, 2009. Counsel for the parties stipulated that disclosure was complete, and that the matter was ready for trial. The plaintiff was directed to file a note of issue on or before October 16, 2009. In accordance with the compliance conference stipulation, and in apparent reliance upon the defendants’ denial of the existence *205 of any other demanded discovery, the plaintiff filed the note of issue on September 30, 2009.
Despite the compliance conference stipulation and the filing of the note of issue nearly seven months earlier, the defendants served a “supplementary response to preliminary conference stipulation and order” dated April 7, 2010, in which they identified four witnesses: Dan Heffron, Brian “Evester,” Guy Graziano, and David Shapiro. The defendants did not provide the addresses of any of these witnesses.
About two weeks later, on or about April 20, 2010, the defendants served an expert witness disclosure giving notice of their intention to offer the opinion of Peter Scalia at the time of trial. Attached to the defendants’ expert witness disclosure was Scalia’s Accident Reconstruction Report (hereinafter the Scalia report), which was dated January 14, 2010, approximately three months before it was served. The opinion posited in the Scalia report, in large part, was based upon the witness statements of Heffron, “Evester,” Graziano, and Shapiro. All four witness statements were taken shortly after the accident between July and September 2008—proximate to the time this action was commenced and well before the service of the plaintiff’s combined demand. In addition, the Scalia report referenced and relied upon 18 photographs taken of the defendants’ vehicle after the accident, as well as a “video run.”
Thereafter, on June 15, 2010, the defendants served a supplemental response to the plaintiff’s November 6, 2008, combined discovery demands, in which they identified three of the witnesses, Heffron, Graziano, and Brian “Eyester,” together with their addresses,[2] and provided 18 photographs of the defendants’ Ford Explorer. The 18 photographs were date-stamped July 10, 2008, which was 15 days after the accident, more than five months prior to the disavowal, by the paralegal for the defendants’ counsel, of the existence of any such photographs and almost one year prior to defense counsel’s denial of their existence “upon information and belief.” The defendants’ supplemental response was served nearly 17 months after the service of the plaintiffs combined discovery demands and nearly 15 months after the deadline set for the defendants’ response to the preliminary conference order that required disclosure of witness information and photographs.
*206 By letter dated June 17, 2010, counsel for the plaintiff promptly rejected the defendants’ supplemental response on the ground that it was “untimely and in violation of all applicable Court rules controlling disclosure.” In the same letter, the plaintiffs counsel also rejected the defendants’ expert disclosure on the basis that the defendants and their counsel “intentionally and willfully violated the rules of disclosure in an attempt to mislead and withhold information.” Counsel noted that, although the witnesses were coworkers of Foronjy and had given recorded statements with respect to the happening of the accident prior to Foronjy’s deposition, these witnesses were not disclosed at the deposition by either Foronjy or defense counsel. With respect to the 18 photographs of the defendants’ vehicle, the plaintiffs counsel pointed out that these photographs were taken less than one month after the accident occurred.
While the action was on the trial calendar, the plaintiff moved by order to show cause on August 11, 2010, (1) for a “default judgment” against the defendants on the issue of liability (this branch of the motion was, in effect, to strike the answer of the defendants), (2) to prohibit the defendants from offering any testimony on the issue of liability at trial, (3) to resolve all issues of liability against the defendants, (4) to preclude the defendants from introducing an accident reconstruction expert at trial, (5) to preclude the defendants from offering the testimony of “occurrence witnesses” at trial, and (6) to preclude the defendants from offering post-accident photographs of the defendants’ vehicle at trial. The plaintiff argued that discovery sanctions were warranted because the defendants acted willfully by intentionally failing to disclose the names of the witnesses and photographs of their vehicle, and repeatedly misrepresenting the nonexistence of such information in response both to the demands seeking such information and to the preliminary conference order requiring the disclosure of such information. He also noted that the defendants had failed to timely produce the photographs of the accident situs and the “video run” referenced in Scalia’s report.
The defendants, in opposition, contended that the discovery sanctions sought by the plaintiff were unwarranted because the late disclosure of this information was neither intentional nor willful, and had not caused any prejudice since the plaintiff could have conducted nonparty depositions of the witnesses at any point before trial, as the defendants had suggested to counsel during a conference. With respect to the photographs, *207 the defendants stated that they, too, were provided well in advance of any trial date. The defendants also inaccurately represented that “several” of the witness names had been disclosed during Foronjy’s deposition. They asserted that the failure to provide formal disclosure of the witnesses’ names and addresses was inadvertent or, at worst, law office failure.
The defendants also pointed out that the plaintiff served a supplemental response to the preliminary conference order on April 14, 2010, including photographs of the accident scene and the plaintiff’s injuries, and a supplemental medical disclosure, on October 4, 2010, subsequent to the filing of the note of issue.
The Supreme Court, in an order dated January 31, 2011, denied the plaintiffs motion. The court noted that the nature and degree of a penalty pursuant to CPLR 3126 is generally within its discretion. It found that there was no showing of an ongoing pattern of willful and contumacious conduct designed to obstruct discovery. The plaintiff appeals. We disagree with the Supreme Court’s conclusion, and modify accordingly.
As the Court of Appeals has noted, the failure of attorneys to comply with court-ordered deadlines has increasingly become a problem in our court system (see Gibbs v St. Barnabas Hosp., 16 NY3d 74, 81 [2010]; Andrea v Amone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d 514, 521 [2005]; Kihl v Pfeffer, 94 NY2d 118, 123 [1999]). Compliance requires not only a timely response, but a good-faith effort to provide a meaningful response (see Kihl v Pfeffer, 94 NY2d at 123; see also Garcia v City of New York, 5 AD3d 725, 726 [2004]; Gomez v Gateway Demolition Corp., 293 AD2d 649, 650 [2002]). The failure to comply with deadlines and provide good-faith responses to discovery demands “impairs the efficient functioning of the courts and the adjudication of claims” (see Gibbs v St. Barnabas Hosp., 16 NY3d at 81; Kihl v Pfeffer, 94 NY2d at 123). The Court of Appeals has also pointed out that “[c]hronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules” (Gibbs v St. Barnabas Hosp., 16 NY3d at 81), and has declared that “[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity” (Kihl v Pfeffer, 94 NY2d at 123; see generally Cadichon v Facelle, 18 NY3d 230 [2011]).
Although perhaps an undesirable outcome, parties, where necessary, will be held responsible for the failure of their lawyers to meet court-ordered deadlines and provide meaningful respon *208 ses to discovery demands and preliminary conference orders (see Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d at 521; Kihl v Efeffer, 94 NY2d at 123; Garcia v City of New York, 5 AD3d at 726). The failure to abide by these basic rules governing compliance with disclosure orders cannot and will not be tolerated in our courts (see Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d at 521; Kihl v Efeffer, 94 NY2d at 123).
In this case, the defendants failed to meet a clear court-ordered deadline for the production of discovery materials. The preliminary conference order provided for the exchange of the names and addresses of all witnesses and photographs on or before January 12, 2009. The defendants did not provide the plaintiff with a response to this order until January 23, 2009. When a “response” was finally provided, the paralegal for the defendants’ attorney inaccurately stated that the defendants were neither in possession of “any photographs of the scene, injuries or vehicles involved” nor “aware of any eye/notice/ admission witnesses” other than those already revealed to the plaintiff. In addition, the record demonstrates that the service of the supplemental discovery responses was not contemporaneous with the defendants’ receipt of the information and photographs disclosed so as to satisfy their continuing disclosure duty under CPLR 3101 (h).
As subsequent disclosure and the Scalia report demonstrate, the paralegal’s response of January 23, 2009, was in derogation of defense counsel’s good-faith disclosure obligations. The paralegal’s representation that there were no materials or information responsive to the plaintiffs demands or the court’s own order with respect to witness information or photographs— which counsel had consented to provide—was false and misleading. Regardless of whether the paralegal’s representation was deliberately false, the response was totally unacceptable. Likewise, defense counsel’s disingenuous denial of the existence of any photographs “upon information and belief,” as set forth in his letter of June 9, 2009, cannot be justified or condoned.
Although the defendants claim that their responses were merely careless practice, the record belies that claim. They were, in fact, intentionally false and misleading, and were interposed for the purpose of avoiding the defendants’ obligation to provide timely and meaningful discovery responses (see Kihl v Pfeffer, *209 94 NY2d at 123). The defendants’ neglect of a court-ordered deadline and misrepresentation of their knowledge or possession of clearly discoverable material and information, without providing any excuse for doing so, must be deemed willful and contumacious (see Northfield Ins. Co. v Model Towing & Recovery, 63 AD3d 808, 809 [2009]). Further, defense counsel’s unsupported, conclusory claim of law office failure cannot be accepted (see Wells Fargo Bank, N.A. v Cervini, 84 AD3d 789, 789-790 [2011]; Star Indus., Inc. v Innovative Beverages, Inc., 55 AD3d 903, 904 [2008]).
Turning to the issue of the appropriate sanction to impose for the defendants’ disregard of their discovery obligations, we are guided by CPLR 3126, which provides:
“If any party . . . refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:
“1. an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order; or
“2. an order prohibiting the disobedient party from supporting or opposing designated claims or defenses, from producing in evidence designated things or items of testimony, ... or from using certain witnesses; or
“3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.”
The Supreme Court has broad discretion in making determinations concerning matters of disclosure (see Those Certain Underwriters at Lloyds, London v Occidental Gems, Inc., 11 NY3d 843, 845 [2008]), including the nature and degree of the penalty to be imposed under CPLR 3126 (see Friedman, Harfenist, Langer & Kraut v Rosenthal, 79 AD3d 798, 800 [2010]). “However, the Appellate Division is vested with its own discretion and corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse” *210 (Those Certain Underwriters at Lloyds, London v Occidental Gems, Inc., 11 NY3d at 845; see Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 745 [2000]; Lewis v John, 87 AD3d 564, 565 [2011]; Byam v City of New York, 68 AD3d 798, 800 [2009]).
Public policy strongly favors the resolution of actions on the merits whenever possible (see Friedman, Harfenist, Langer & Kraut v Rosenthal, 79 AD3d at 800; Byam v City of New York, 68 AD3d at 801; Espinal v City of New York, 264 AD2d 806, 806 [1999]). The striking of a party’s pleading is a drastic remedy only warranted where there has been a clear showing that the failure to comply with discovery demands was willful and contumacious (see Commisso v Orshan, 85 AD3d 845, 845 [2011]; Friedman, Harfenist, Langer & Kraut v Rosenthal, 79 AD3d at 800; Byam v City of New York, 68 AD3d at 801). Similarly, the alternative remedy of preclusion may also be appropriate where “the offending party’s lack of cooperation with disclosure was willful, deliberate, and contumacious” (Assael v Metropolitan Tr. Auth., 4 AD3d 443, 443 [2004]; see Zakhidov v Boulevard Tenants Corp., 96 AD3d 737 [2d Dept 2012]; Allen v Calleja, 56 AD3d 497, 498 [2008]). “The willful and contumacious character of a party’s conduct can be inferred from the party’s repeated failure to comply with discovery demands or orders without a reasonable excuse” (Commisso v Orshan, 85 AD3d at 845; see Giano v Ioannou, 78 AD3d 768, 771 [2010]; Northfield Ins. Co. v Model Towing & Recovery, 63 AD3d at 809; McArthur v New York City Hous. Auth., 48 AD3d 431, 431 [2008]; Bomzer v Parke-Davis, Div. of Warner Lambert Co., 41 AD3d 522, 522 [2007]; Maiorino v City of New York, 39 AD3d 601, 602 [2007]; Cafaro v Emergency Servs. Holding, Inc., 11 AD3d 496, 498 [2004]).
Here, the defendants’ pre-note of issue responses to the plaintiffs combined demands inaccurately asserted that they were unaware of any witnesses other than Foronjy, and later Danny Heffron, and that they were not in possession of any photographs. These responses were later revealed, by the defendants’ own supplemental responses, to be misleading and false, as post-accident photographs, the video run, and witness statements of Danny Heffron, Brian “Evester,” Guy Graziano, and David Shapiro were relied upon in the Scalia report. Addresses for these witnesses, as well as their statements, in addition to the 18 digital images and video run relied upon by Scalia, were not provided to the plaintiff until the defendants served their supplemental response to the plaintiffs combined demands *211 on June 15, 2010, more than eight months after the filing of the note of issue, although that information was obviously available to the defendants prior to the date that the preliminary conference was conducted. Contrary to the finding of the Supreme Court, this demonstrates an ongoing pattern of willful and contumacious conduct which served to obstruct discovery, notwithstanding the disclosure of some information responsive to the plaintiffs demand.
Under these circumstances, it was an improvident exercise of the Supreme Court’s discretion to have denied, in its entirety, the plaintiffs motion to impose sanctions upon the defendants pursuant to CPLR 3126. The defendants’ disregard of their court-ordered discovery obligations cannot be tolerated (see Gibbs v St. Barnabas Hosp., 16 NY3d at 81; Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d at 521; Kihl v Pfeffer, 94 NY2d at 123). The defendants engaged in an ongoing course of conduct of delay and obfuscation during this litigation, including the provision of information which was inaccurate if not intentionally false, the neglect of a court-ordered discovery deadline, and the service of “corrected” information long after Foronjy’s deposition was conducted and the note of issue filed. This conduct merits the strong sanction of preclusion, with the defendants permitted to employ, at trial, only that which was disclosed in a reasonable and timely manner.
While we acknowledge that the defendants attempted to correct their inaccurate discovery responses many months after the filing of the note of issue by serving supplemental responses, the belated corrections were inadequate to cure the prejudice to the plaintiff, who theretofore relied upon the truthfulness and completeness of his adversaries’ proffer during the course of the litigation. The rights of the demanding party to be able to fully prepare for trial simply cannot be protected by either belated corrective supplements or the hope of discretionary discovery while the action is on the trial calendar.
The case at bar is readily distinguishable from the cases cited by the defendants, in which no sanction was imposed because full disclosure was made, albeit belatedly. Here, while full disclosure was ultimately made approximately nine months after the filing of the note of issue, it was preceded by false representations that the defendants did not have the witness information and photographs requested. Indeed, had the defendants not produced the witness information, the video run, and the *212 photographs while the case was on the trial calendar, there would have been no basis upon which the plaintiff would have sought it given the repeated misrepresentations by the defendants, through their counsel, that no such information was in their possession or impliedly in existence.
The defendants’ affirmative misrepresentations undercut their position that they acted only belatedly, but not willfully and contumaciously. Furthermore, it is clear that the defendants did not make a good-faith effort to comply with outstanding discovery demands and disclosure orders. The witness information, video run, and photographs, which formed the basis of the Scalia report, were all dated months prior to their disclosure to the plaintiff. Accordingly, the defendants’ belated disclosure cannot be excused upon the ground that they were making a good-faith effort to comply with long-outstanding discovery demands and disclosure orders.
In fashioning a remedy under CPLR 3126, we are cognizant that Foronjy did provide Heffron’s name and address during his deposition. As a result, the defendants will not be precluded from calling Heffron as a witness at the time of trial. This Court, however, rejects the suggestion of the defendants that, with proper investigation, the plaintiff could have ascertained the identities of the other witnesses from the information that the defendants provided. Although Foronjy indicated that Brian “Ester” was a witness to the accident, the name of this fellow FJF employee was incorrectly spelled phonetically in the deposition transcript, and Foronjy testified that “Ester” lived in Farmingdale when, in fact, he apparently resides in Massepequa. Regardless of whether the plaintiff could have ascertained the true name and address of Brian “Evester,” and the identities of the two other witnesses through further investigation, the fact remains that the defendants abjectly failed to appropriately meet their discovery obligations, as required by CPLR article 31, the plaintiff’s demands thereunder, and the preliminary conference order. It was the defendants’ responsibility to provide the information with respect to the remaining three witnesses, the photographs, and the video run, which they plainly had in their possession long before they finally decided to reveal it (see CPLR 3101 [h]). The failure to timely provide a complete and accurate response seriously impaired the plaintiff’s ability to fully prepare for and conduct Foronjy’s deposition, and thereby chart the plaintiffs course during the litigation and in preparing for trial.
*213 For the foregoing reasons, we modify the Supreme Court’s order and preclude the defendants from calling any of the witnesses identified in their post-note of issue discovery responses as a witness at trial, except for Heffron, or from utilizing so much of the Scalia report as relied upon the statements of the precluded witnesses. Further, the defendants are precluded from introducing any of the post-accident photographs of their vehicle and the video run at the time of the trial, and Scalia is precluded from testifying and offering an opinion utilizing or relying upon the statements of the precluded witnesses, photographs, or video run. Accordingly, to the extent that the Scalia report also relied upon the precluded photographs or the precluded video run, it must also be precluded. However, the plaintiff shall not be precluded from utilizing any such photographs and calling any such witnesses he deems appropriate, in which case the defendants may appropriately respond in the discretion of the trial court.
Finally, we do not need to address the defendants’ contention that the plaintiff served belated post-note of issue responses to the defendants’ discovery demands, inasmuch as no motion addressing this allegedly belated disclosure was made.
Accordingly, the order is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof denying that branch of the plaintiffs motion which was to preclude the defendants from producing any “occurrence witnesses” at the time of trial and substituting therefor a provision granting that branch of the motion to the extent of precluding the defendants from calling Brian “Evester,” Guy Graziano, and David Shapiro as witnesses at the time of trial, (2) by deleting the provision thereof denying that branch of the plaintiff’s motion which was to preclude the defendants from offering any post-accident photographs of the defendants’ vehicle at the time of trial and substituting therefor a provision granting that branch of the motion, and (3) by deleting the provision thereof denying that branch of the plaintiffs motion which was to preclude the defendants from calling Peter Scalia, an accident reconstructionist, as an expert at the time of trial and substituting therefor a provision granting that branch of the motion to the extent that Peter Scalia is precluded from relying upon or testifying about the witness statements of Brian “Evester,” Guy Graziano, and David Shapiro, the photographs of the defendants’ vehicle, and the video run in offering his opinion, the defendants are precluded from offering the video run into evidence at trial, *214 and the defendants are precluded from relying upon or offering into evidence at trial the written report of Peter Scalia, to the extent that the report relies upon the precluded witness statements, photographs, or video run; as so modified, the order is affirmed.
Dillon, J.P., Dickerson, Leventhal and Miller, JJ., concur.
Ordered that the order is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof denying that branch of the plaintiffs motion which was to preclude the defendants from producing any “occurrence witnesses” at the time of trial and substituting therefor a provision granting that branch of the motion to the extent of precluding the defendants from calling Brian “Evester,” Guy Graziano, and David Shapiro as witnesses at the time of trial, (2) by deleting the provision thereof denying that branch of the plaintiffs motion which was to preclude the defendants from offering any post-accident photographs of the defendants’ vehicle at the time of trial and substituting therefor a provision granting that branch of the motion, and (3) by deleting the provision thereof denying that branch of the plaintiffs motion which was to preclude the defendants from calling Peter Scalia, an accident reconstructionist, as an expert at the time of trial and substituting therefor a provision granting that branch of the motion to the extent that Peter Scalia is precluded from relying upon or testifying about the witness statements of Brian “Evester,” Guy Graziano, and David Shapiro, the photographs of the defendants’ vehicle, and the video run in offering his opinion, the defendants are precluded from offering the video run into evidence at trial, and the defendants are precluded from relying upon or offering into evidence at trial the written report of Peter Scalia, to the extent that the report relies upon the precluded witness statements, photographs, or video run; as so modified, the order is affirmed, with costs to the plaintiff.

. At various points throughout this litigation, this witness has been identified or disclosed as Brian “Ester,” “Evester,” and “Eyester.”

. The defendants provided a Massapequa address for Brian “Eyester” in their supplemental response, contrary to Foronjy’s deposition testimony that Brian “Ester” lived in Farmingdale.